UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>VICKI LEE SHERVEN,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Criminal No. 1:25-CR-66<br><br>**DEFENDANT'S POST-HEARING BRIEF** |

Vicki Lee Sherven, Defendant above-named, by and through her attorney, Magdalena R. Brockel, submits this Post-Hearing Brief following a hearing on Defendant's Motion to Suppress Evidence and Dismiss Indictment. Based upon the evidence and testimony submitted with the motion documents filed and that received during the hearing held on those motions, all physical and statement evidence obtained during the traffic stop involving the Defendant on December 9, 2024, as well as Defendants post-arrest statements, must be suppressed. This evidence was the product of an unlawful search and seizure and/or are fruits of the poisonous tree.

**RELEVANT LAW**

The Fourth Amendment of the United States Constitution protects people from unreasonable searches and seizures. U.S. CONST. amend. IV. Warrantless searches are "per se" unreasonable unless an applicable exception exists. *United States v. Vittetoe*, 86 F.4th 1200, 1202 (8th Cir. 2023). There is an automobile exception that permits a warrantless search of a vehicle on the basis of probable cause that evidence of contraband or criminal activity will be found therein. *United States v. Shackleford*, 830 F.3d 751, 753 (8th Cir. 2016) (citations omitted). Probable cause requires a "fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* More specifically, "probable cause exists when, given the ***totality of the circumstances***, ***a reasonable person*** could believe there is a fair probability that contraband or evidence of a crime will be found." *Vittetoe*, 86 F.4th at 1203 (emphasis added). It is an ***objective*** test. *Id.* (emphasis

added). For suspicion of criminal activity to be reasonable, it "must be more than an 'inchoate and unparticularized suspicion or "hunch".'" *United States v. Smith*, 789 F.3d 923, 928 (8th Cir. 2015) (citation omitted). The alleged scent of marijuana (something completely subjective and without tangible, objective proof that can be presented to a court) must be supported by "credible testimony [of] an officer" for probable cause to exist. *Id.* at 929.

The scope of any seizure is specific to the circumstances of each case. *Florida v. Royer*, 460 U.S. 491, 500 (1983). "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. . . . Investigative methods employed should be the ***least intrusive means*** reasonably available to verify or dispel [an] officer's suspicion in a short period of time." *Id.* (emphasis added). The government has the burden to prove the scope and duration of a seizure was sufficiently limited to meet the "least intrusive means" requirement. *Id.*

Also, any statements provided by someone during an illegal detention are inadmissible, even if said statements were voluntarily given. *Royer*, 460 U.S. at 501 (citations omitted); *see Wong Sun v. United States*, 371 U.S. 471 (1963); *see also Segura v. United States*, 468 U.S. 796, 804 (1984) (noting that evidence "obtained as a direct result of an illegal search or seizure" must be excluded, as well as "evidence later discovered and found to be derivative of an illegality [under the] 'fruit of the poisonous tree'" precept). A detention is found when a reasonable person would not believe that she was free to leave. *Id.* at 502 (citation omitted). A traffic stop is a form of detention where a person would not reasonably believe they were free to leave unless and until the law enforcement officer terminates the stop.

## ANALYSIS

The issue here is not whether a valid traffic stop was made. The issue is that the valid traffic stop was impermissibly extended for the purposes of initiating officer, Officer Timothy, to find some justification to search Defendant's vehicle and to then carry out that illegal search. The government's post-hearing arguments are fraught with overstatements and

mischaracterizations of the evidence presented to the court both through the submitted evidence and the testimony presented at the court hearing. An objective view of this evidence reveals only one conclusion—the law enforcement officers neither had probable cause to search the vehicle, nor did they have a sufficiently reasonable suspicion to further detain and investigate the matter during the course of the stop. Rather than diligently complete and issue traffic citations, the officer who initiated the stop prolonged that stop by repeatedly seeking input from other officers to try to get probable cause for a search because he "[didn't] know if he could smell [marijuana] or not." The other officers testified that they did not smell marijuana prior to the stop being prolonged. Thus, the search was supported by the Defendant's criminal history alone, which the government concedes was a reason for why the officers wanted to search the vehicle. This was impermissible and violated Defendant's constitutional rights.

Apart from traffic violations, the officers involved in the traffic stop at issue here, neither individually nor collectively, had reasonable suspicion or probable cause to prolong the stop and conduct a search. All three officers at the suppression hearing affirmed that they had training in detecting the smell of controlled substances, that they were familiar with the smell of marijuana in both smoked and raw form, and that the smell of marijuana was a distinct odor that they were able to detect. However, none of those officers indicated that they could, without question, detect the distinct odor of marijuana emanating from the vehicle that night.

Officer Timothy indicated that he was not sure if he could detect the odor or not, repeatedly noting that it could be an "ambient" odor he was detecting. The second officer, Officer Glatt, testified that he approached the vehicle on the driver's side and did not smell marijuana while standing there next to Joseph Freeman, who later tried to dispose of a blunt after exiting the vehicle—after the stop was impermissibly prolonged. Officer Timothy specifically told Seargent Jones, the third officer, "I can't tell if there's weed coming from the car. Glatt can't smell it. I don't know if I can smell it or not. Kind of like, not enough where I'm confident searching the car.

Passenger has a history of PWI[1]. So, I was just wondering." Exhibits 1 and 6 at 21:55. Seargent Jones also testified that he did not smell marijuana until after Joseph Freeman exited the vehicle and tried to dispose of the blunt—again, after the stop was impermissibly prolonged.

The bodycam footage of the stop makes clear that the officers, apart from Defendant's criminal history, had no reasonable suspicion, let alone probable cause, to believe that criminal activity was underway. Officer Timonthy testified that he specifically noticed Defendant's prior PWI history, and it was one of the first things he shared with Seargent Jones once he arrived on scene. Seargent Jones even commented about Defendant's criminal history, referring to it as "nefarious criminal activities." Exhibits 1 and 6 at 23:53. Rather than diligently working to complete the citations for the traffic stop, Officer Timothy called in other officers, repeatedly looked at Defendant's criminal history—looking for warrants, and repeatedly checked a mapping system that showed him the locations of other on-duty officers to see how far off they were from responding to his traffic stop after requesting them to come on scene.

Officer Timothy noted, and it is evident on the bodycam footage, that while he could have been completing the traffic citations, he would stop and check the mapping system to see where Seargent Jones was in relation to his location. He also testified that he never completed those citations prior to asking Joseph Freeman and Defendant to exit the vehicle. He further specifically testified that he intended to search that vehicle at the time he asked them to exit the vehicle, and NOT that he made that determination after they had exited and Joseph Freeman tried to dispose of a marijuana blunt.

Contrary to the assertions made in the government's brief, Officer Timothy's actions went beyond what was appropriate during this particular stop, in light of the evidence he actually had at the time. Yes, it was appropriate for him to make his checks during the stop. But, Officer Timothy

[1] PWI means Possession with Intent to Distribute a Controlled Substance.

fixated on Defendant's criminal history, and when Officer Glatt did not provide him the justification he wanted to search the vehicle, he called another officer, Seargent Jones, to come in and help provide him justification, specifically noting her PWI history as the basis after explaining that he "[didn't] know if he could smell [marijuana] or not." Defendant's criminal history was the motive to search and the **sole basis** for doing so. This is impermissible.

The government cites multiple cases to support the proposition that "when an officer smells the odor of marijuana as he approaches a stopped motor vehicle, he has ample justification to extend the traffic stop." Doc. No. 249 at 4. The problem with that reasoning is that none of the officers clearly noted a smell of marijuana. Officer Timothy attempted to get an admission from the occupants of the vehicle by asking them if they had been smoking marijuana, but they denied any use. Exhibits 1 and 6 at 14:07. He then stated, "Okay. I can smell it standing here, but I don't know if it's coming from you guys or if it's just . . . because of the neighborhood, you know." *Id.* at 14:13.

When the occupants of the vehicle did not give him the probable cause he wanted to search the vehicle, he called in Seargent Jones, specifically testifying that it was because that officer had a K-9 unit. The government concedes to this in its brief. Doc. No. 249 at 5. In other words, Officer Timothy was still looking for a reason to get into and to search the vehicle. Officer Timothy did not have probable cause to search the vehicle and he knew it. The fact that he called in a K-9 unit makes this clear. He called that unit in because he wanted a canine to sniff around the vehicle to give him the probable cause he sought. And the sole basis for seeking further evidence to search the vehicle was Defendant's criminal history of PWI.

Officer Timothy, rather than diligently complete the traffic citations and allow the vehicle's occupants to carry on their way, delayed completion of those citations, repeatedly stopping to check where the K-9 unit was in relation to his location on his squad computer's mapping system. He testified to this specifically at the suppression hearing. *See* Exhibits 1 and 6 at 15:05 to 21:42.

When the K-9 unit arrived, rather than Seargent Jones producing a canine to complete a canine sniff, he "reframed" Officer Timothy's clear statements that he did not know whether he could smell marijuana or not and that he did not have probable cause to search the vehicle.[2] Seargent Jones literally completely changed Officer Timothy's statements that he did not know if he could smell marijuana from the vehicle or if it was just the neighborhood, and that, in fact, he did not even know if he could smell marijuana at all to him only smelling marijuana while standing next to the vehicle. That is not a "reframing." That is a complete fabrication.

Officer Timothy, rather than completing the traffic citations, had the occupants exit the vehicle with the intent to search it. He testified to this specifically at the suppression hearing. He impermissibly prolonged the stop without reasonable suspicion, let alone probable cause, on the basis of Defendant's criminal history alone. Rather than asking the occupants to step out of their vehicle, he should have been handing them the citations and allowing them to leave the scene. The statements made after exiting the vehicle about being in the company of individuals who had been smoking marijuana do not justify prolonging the stop. It had already been impermissibly prolonged by that time. Everything that happened from the moment they were asked to exit the vehicle and all evidence acquired thereafter was obtained through a violation of their constitutionally protected rights under the Fourth Amendment. And any post-arrest statements are clearly fruit from the poisonous tree.

The government makes some troubling mischaracterizations in its brief. The assessment of this case does not turn on the fact that Joseph Freeman tried to dispose of a blunt in his pants pocket prior to the search commencing. This happened after he exited the vehicle already.[3] Seargent Jones

---

[2] No explanation was provided at the suppression hearing as to why the K-9 unit failed to produce a canine after Seargent Jones' arrival at the traffic stop.

[3] The government states, "before that search commenced, and before either Officer Timothy or Officer Glatt opened the doors to the vehicle, Mr. Freeman discarded onto the ground a marijuana joint that he had been concealing in his hand and/or pocket." This is incredibly misleading. Joseph Freeman had already exited the vehicle at this point. He did not jump out the window. He opened the door to do so.

basically told Officer Timothy that he had probable cause to search and to have the occupants exit the vehicle for questioning. The very act of having occupants exit a vehicle would give them more access to the vehicle's contents when they open the vehicle doors, perhaps allowing them to potentially uncover contraband in clear view. Regardless, Officer Timothy testified that the intention was to have them exit the vehicle ***and*** complete a search. Any and all motivation to diligently terminate the traffic stop, the reason for the entire encounter, was abandoned in order to search the vehicle for drugs.

The warrantless search was unconstitutional. The totality of the circumstances did not provide either a reasonable suspicion to further investigate nor probable cause to conduct a search of the vehicle. The government tries to claim that the post-vehicle-exit events provide some sort of after-the-fact justification for the officers' conduct, but that would render the protections of the Fourth Amendment of the United States Constitution an absolute nullity. These facts do nothing to support the illegal search and seizure that took place in this case. All evidence seized from the search, any statements made once the traffic stop was impermissibly prolonged, and any post-arrest statements must all be suppressed. They were acquired through a violation of Defendant's Fourth Amendment rights and/or they are the fruit of the poisonous tree.

The government did not address dismissal of the indictment in its post-hearing brief. Sadly, the law provides the government with an unfair advantage in this regard. The grand jury proceedings are secret, and Defendant is unable to acquire the grand jury transcripts unless she proceeds to trial. The state of the law regarding grand jury proceedings is best described as oppressive.

According to the Concise Oxford American Dictionary (2006), the word "oppressive" means "unjustly inflicting hardship and constraint." In a country where we claim to have open government where freedom reigns, this seems counterproductive to those particular claims. Did the founders of our form of government make the grand jury system this way or is this something

that developed over time by those wishing to exert ever more power and control over American liberties? Undersigned counsel, unfortunately, has not the time to research and provide the Court with a historical analysis on this matter. Nor does undersigned counsel think the Court—especially the Circuit Court—would want to pay her for the time she would need to put together a thoughtful analysis.

Defendant asserts that the entire basis of the indictment includes that evidence which would and should be suppressed here. Without it, no indictment would be had. Thus, the indictment should be dismissed. But the government gets to hide that fact from Defendant and from the Court.

Finally, while not addressed at the suppression hearing, there was a gun seized during the search. This was addressed in the original motion documents filed by Defendant. It is a family heirloom and should also be returned.

## CONCLUSION

Because the contraband found in this case against Vicki Sherven and the fruits therefrom were obtained in violation of the Fourth Amendment of the United States Constitution, they must all be suppressed. The defense respectfully asks the Court to order suppression of the noted evidence illegally obtained in this case, dismissal of the indictment, and that the government return the seized gun to either Defendant's son or daughter.

Dated this 27th day of September 2026.

Respectfully submitted,

*/s/ Magdalena R. Brockel*
MAGDALENA R. BROCKEL
**RED RIVER LAW, PLLC**
P.O. Box 133
Horace, ND 58047
701-314-2424
*maggie@redriverlawpllc.com*